**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW J. MEES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:13 CV 1204 SNLJ / DDN |
| | ) |
| JAMES HURLEY, | ) |
| | ) |
| Respondent. | ) |

## ORDER AND RECOMMENDATION

This action is before the court upon the petition of Missouri state prisoner Matthew J. Mees for a writ of habeas corpus and an evidentiary hearing pursuant to 28 U.S.C. § 2254. (Docs. 1, 24.) The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1).

On October 27, 2014, the court appointed counsel for petitioner Mees for the limited purpose of determining whether or not the statutory limitations period of 28 U.S.C. § 2244(d)(1) should be equitably tolled.[1] (Docs. 15, 17.) For the reasons set forth below, the undersigned denies an evidentiary hearing and recommends that the petition for habeas corpus be denied.

## I. BACKGROUND

On March 15, 2006, in the Circuit Court of St. Louis County petitioner Mees pled guilty to three counts of first degree child molestation. (Doc. 13-1 at 3.) On April 27, 2006, the circuit court sentenced petitioner to concurrent terms of fifteen years imprisonment on each of the three counts. (Doc. 13-1 at 3-4, 8-9.) Additionally, the

---

[1] The court thanks JoAnn Trog, Esq. for her expert and diligent efforts in the representation of petitioner Matthew J. Mees in this proceeding.

court sentenced petitioner to shock incarceration for 120 days pursuant to Mo. Rev. Stat. § 559.115. (Id.) He successfully completed the shock incarceration and execution of his three fifteen year sentences were suspended. (Id.) On July 28, 2006, the Circuit Court released petitioner to five years probation. (Id. at 4.) During the period November to December 2008,[2] the court revoked petitioner's probation and ordered the execution of the fifteen-year sentence of incarceration. (Id. at 5.)

Petitioner Mees did not appeal his original convictions and sentences or the revocation of probation. (Doc. 1 at 2.)

On July 10, 2012, he filed a petition for a writ of habeas corpus under Missouri Supreme Court Rule 91 in the Circuit Court of Washington County. Mees v. Steele, Case No. 12WA-CC00319.[3] On February 4, 2013, after considering the pleadings, the Circuit Court denied the petition. Id. On April 1, 2013, petitioner filed a Rule 91 petition for a writ of habeas corpus in the Missouri Court of Appeals. Mees v. Hurley, Case No. ED99759.[4] That petition was denied on April 18, 2013. Id.

On June 25, 2013, petitioner Mees filed the instant federal habeas petition under 28 U.S.C. § 2254. (Doc. 1.) On October 27, 2014, this court issued an order: (1) appointing counsel to address only the issue of equitable tolling for petitioner Mees; and (2) ordering respondent to file a copy of the transcript of the probation revocation hearing and sentencing as well as the order revoking the probation, issued by the Circuit Court of St. Louis County in Case No. 2104R-00587-01. (Doc. 15.) On December 11, 2014, respondent filed a copy of the order revoking petitioner's probation but, after a diligent search, could not locate the transcript of the probation revocation hearing and sentencing. (Doc. 22.)

---

[2] The circuit court docket entries for November 13 and December 31, 2008 indicate that the sentencing occurred on November 13, 2008, while the revocation hearing occurred on December 31, 2008. See Doc. 13-1 at 5.

[3] The undersigned takes judicial notice of the information found on the Missouri Courts case website, Case.net, http://www.courts.mo.gov/casenet/.

[4] See footnote 2.

On January 8, 2015, petitioner, through counsel, filed a memorandum and motion arguing that the time to file a federal habeas petition should be equitably tolled due to petitioner's mental impairments. Additionally, petitioner requested an evidentiary hearing. (Doc. 24.)

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges four grounds for federal habeas relief:

(1) The trial court erred by accepting petitioner's guilty plea because the plea was "unknowing, involuntary, and unintelligent."

(2) His trial court counsel rendered constitutionally ineffective assistance by failing to investigate the facts of the case and petitioner's history of mental illness before advising him to plead guilty.

(3) His trial court counsel rendered constitutionally ineffective assistance by failing to challenge the charges as a violation of double jeopardy.

(4) His trial court counsel rendered constitutionally ineffective assistance by requesting that petitioner sign an admission of guilt and then using the statement to convince him to plead guilty.

(Doc. 1 at 5-11.)

Respondent contends (1) petitioner did not file his federal habeas petition within the time required by the applicable federal statute of limitations, and (2) his grounds for relief are without merit. (Doc. 13.)

## III. STATUTE OF LIMITATIONS

To obtain federal habeas relief, state prisoners must apply for habeas corpus relief within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Congress has also provided, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

All of petitioner's grounds for relief relate to his guilty plea, conviction, and original sentence. Only the event described in § 2244(d)(1)(A), above, applies to these proceedings and it occurred on April 27, 2006. (Doc. 13-1 at 3-4.) Petitioner had ten days thereafter, until May 7, 2006, to directly appeal the judgment and sentences, Mo. Sup. Ct. R. 81.04(a), but he did not do so. Therefore, the one year federal habeas limitations period began to run on May 7, 2006 and ended on May 7, 2007.

By the time Mees filed his petitions for habeas corpus relief under Missouri Supreme Court Rule 91 on July 10, 2012 in the Circuit Court of Washington County and on April 1, 2013 in the Missouri Court of Appeals, his federal statutory limitations period had long since run. Therefore, no *statutory* tolling under 28 U.S.C. § 2244(d)(2) of the one-year federal limitations period occurred. This court considers whether there are circumstances that establish that *equitable* tolling is appropriate. Gray v. Gammon, 283 F.3d 917, 918 (8th Cir. 2002) (per curiam).

## IV. EQUITABLE TOLLING

Mees argues the federal limitations period was *equitably* tolled. Equitable tolling is applicable to the § 2244(d)(1) limitations period in appropriate cases. Holland v. Florida, 560 U.S. 631, 646 (2010). Equitable tolling may be available "only if [a habeas

petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (citations omitted); see also Walker v. Norris, 436 F.3d 1026, 1032 (8th Cir. 2006); Gray, 283 F.3d at 918 (holding "that the one-year limitations period is equitably tolled when 'extraordinary circumstances' have made it impossible for the habeas petitioner to file a timely federal petition").

Mees alleges two factual circumstances that establish his entitlement to equitable tolling:  first, the statement by the circuit court at his guilty plea that he could not seek appellate court review; and, second, his mental condition.  As previously discussed by this court, petitioner Mees's first reason for equitable tolling does not have merit.  (See Doc. 15 at 4–5.)  As a second circumstance for equitable tolling, petitioner argues that during the federal habeas corpus limitations period he suffered from mental illnesses that prevented him from understanding the need to file the federal petition before May 7, 2007.  Adopting the words of his prison advisor, Mees alleges:

> It was through no direct fault of petitioner that he did not understand the post-conviction remedies available to him including filing in the Federal Court within the 1 year time frame following his convictions.  Petitioner has a history of mental illnesses which have an effect on his ability to understand.

(Doc. 1 at 13.)

The court believed that Mees's second reason, his mental condition, was not adequately briefed for this court to make a determination, and, therefore the court appointed counsel and ordered additional briefing.  Although petitioner Mees suffers from diagnosed psychiatric conditions (Doc. 24-2 at 9), after careful consideration of the record filed by counsel for both parties, for the reasons set forth below, the undersigned concludes that Mees's psychiatric conditions did not affect his ability to timely file a federal habeas petition in this case.

To toll the federal limitations period, a federal habeas petitioner must establish he pursued his rights diligently, but suffered from a mental condition that limited his ability to file his federal petition within the limitations period.  Lawrence v. Florida, 549 U.S.

327, 337 (2007); cf. Collins v. Scurr, 230 F.3d 1362, 1362 (8th Cir. 2000) (per curiam) (finding "bald and unsupported assertions" insufficient because they related to the time of his guilty plea, not to the time he filed his federal petition; no entitlement to equitable tolling where petitioner had not made a showing that he diligently pursued his federal habeas relief after the state courts denied him post-conviction relief "and still could not have completed it on time due to mental incompetency."). The mere diagnosis of a psychiatric disorder is not enough to warrant tolling; the disorder must interfere with a petitioner's ability to file a timely petition. See Nichols v. Dormire, 11 F. App'x 633, 634 (8th Cir. 2001) (per curiam) (dismissal of habeas petition affirmed even though petitioner was diagnosed with various psychotic disorders, because the "degree and duration of Nichols's mental impairments" did not interfere with his ability to file a timely petition).

The Eighth Circuit has not provided a specific test to determine when a mental illness is so significant to warrant tolling in a habeas corpus case. However, in an employment case it held "[a] plaintiff seeking equitable tolling on the ground of mental incapacity must come forward with evidence that a mental condition prevented him or her from understanding and managing his affairs generally and from complying with the deadline that he seeks to toll." Schankman v. United States, No. 4:08 CV 660 CDP, 2009 WL 3763325, *3 (E.D. Mo. Nov. 9, 2009) (quoting Jessie v. Potter, 513 F.3d 709, 715 (8th Cir. 2008)); see also Spears v. Warden, 605 F. App'x 900, 904–05 (11th Cir. 2015) (petitioner must show a "causal connection between his alleged mental incapacity and his ability to file a timely petition"); Champney v. Sec'y Pa. Dep't of Corr., 469 F. App'x 113, 117 (3d Cir. 2012) ("the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely action") (internal quotations omitted); Ata v. Scutt, 662 F.3d 736, 741–42 (6th Cir. 2011) ((two part test for equitable tolling due to mental incompetence); Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010) (setting forth a two-part part test for equitable tolling due to mental impairment). The federal district court in Minnesota put it succinctly,

> [E]quitable tolling is warranted when petitioner sustains the burden of showing that mental illness during the limitations period actually made timely filing impossible because he either was substantially incapable of rational thought or unable to determine he must take legal steps.

Waddell v. Symmes, Civ. No. 09-417 JNE/AJB, 2010 WL 5804974, at *8 (D. Minn. Nov. 30, 2010) (quoting Schleicher v. Fabian, Civ. No. 07-4207 DWF/AJB, 2008 WL 4104702, at *6 (D. Minn. Aug. 28, 2008)).

In Nichols, the petitioner had been diagnosed with various psychotic disorders and prescribed psychotropic medications, but the court still found that these conditions did not interfere with his ability to file a timely petition. Nichols, 11 F. App'x at 634. Nichols was not suicidal or homicidal, could register complaints to prison officials, did not suffer from auditory or visual hallucinations, and appeared coherent and alert at all times. Id. In Miller v. Minor, a prisoner, who was declared disabled by the Social Security Administration for mental illness, including a diagnosis of bi-polar disorder, was not entitled to equitable tolling, because it did not interfere with his ability to file timely. No. 14-0147-CV-W-HFS-P, 2015 WL 1345449, at *2 (W.D. Mo. Mar. 23, 2015).

The question before the court is whether the petitioner's mental impairments were of such severity that they prevented him from filing his petition between May 7, 2006 and May 7, 2007. See Waddell, 2010 WL 5804974 at *8; c.f. Nichols, 11 F. App'x at 634. In this case, petitioner has provided the court with material records that indicate he suffered from mental impairments, (Docs. 1-3, 24-1, 24-2), but they do not indicate that he was so substantially impaired he could not file a timely petition. (Doc. 1-3.)

In 2005, petitioner and his family were assessed by the state's Children's Division due to a hotline report of inappropriate sexual contact between siblings. (Doc. 24-1.) Although the minors' names are redacted, none of the family members were referred for long-term counseling and the case was closed on March 21, 2005. (Id.)

On January 31, 2006, the Family Court of St. Louis County dismissed the juvenile petition. Petitioner was then sent to the Circuit Court of St. Louis County for three counts of child molestation, because he was no longer an appropriate offender for the juvenile court system. (Doc. 1-3 at 4–7.) There is no indication that a mental health

evaluation was performed in conjunction with the case against petitioner in Family Court in 2006.

On March 14, 2006, the Circuit Court accepted petitioner's guilty plea for three counts of child molestation. Petitioner was represented by counsel at this hearing and the court conducted an inquiry regarding petitioner's competency and mental capacity.

THE COURT: How far did you go in school?

THE DEFENDANT: To the 11th grade.

THE COURT: So you can read and write?

THE DEFENDANT: Yes.

THE COURT: Are you having trouble understanding or hearing me?

THE DEFENDANT: No.

THE COURT: Have you ever been a patient in a mental hospital or institution?

THE DEFENDANT: No

THE COURT: Have you had anything alcoholic to drink in the last 12 hours?

THE DEFENDANT: No.

THE COURT: Are you on any drugs or medication at this time?

THE DEFENDANT: No.

(Doc. 1-3 at 11–12.)

No mental health assessment beyond this colloquy was performed by Circuit Court. (Id. at 9–17.) Petitioner was released on probation on July 28, 2006 after a 120-day shock incarceration. (Doc. 13-1 at 4, Resp. Ex. A at 4.)

At this point, petitioner had a little over nine months in which to seek a timely writ of habeas corpus, which was due on May 7, 2007.

Petitioner was on probation from July 28, 2006 until September 16, 2008. (Id.) While on probation, nothing indicates petitioner had mental health difficulties which would have prevented him from filing a timely petition. Petitioner has not filed any

mental health documentation indicating extraordinary circumstances during the applicable time which would have precluded him from timely filing.

Petitioner was not seen by a mental health professional until he was evaluated in a federal case in this court for mitigation purposes only by Brooke Kraushaar, Psy. D, on October 19, 2009, in case No. 4:09 CR 145 ERW. Petitioner had pled guilty to possession of child pornography in this federal criminal prosecution and his competency was not challenged. United States v. Mees, No. 4:09 CR 145 ERW (E.D. Mo. July 23, 2009) (Docs. 54, 55.)

Dr. Kraushaar described plaintiff's account of his sordid history of physical and sexual abuse by his biological parents as well as by his adoptive father. His biological parents had their parental rights severed when he was very young, and little is known of them. His biological mother may have suffered from schizophrenia and his father may have been a drug addict. This left petitioner predisposed to psychological issues. His adoptive father regularly abused him: spankings with a paddle, leaving marks; kneeling on rice grains for long periods of time; forcing him to eat until he vomited; and forcing him to sleep naked if petitioner wet the bed. Additionally, petitioner states that he was sexually abused by a daycare worker, a pediatrician, and his adoptive father. He was treated for Attention Deficit Hyperactivity Disorder (ADHD) and was prescribed Ritalin for a short period of time when he was age 7 or 8. He stated that his ADHD continued to affect him by making it more difficult to write and focus. Petitioner states he began drinking alcohol around the age of 12, but began to drink to excess in 2005 after the death of his best friend. This drinking to excess lasted approximately a year, but resumed upon the death of petitioner's grandmother. Petitioner denies any drug use other than experimental marijuana use twice. (Doc. 24-2 at 3–6.)

Dr. Kraushaar assessed plaintiff as having difficulty with attention and concentration, but he was able to provide "reasonable solutions to social comprehension questions." She also found that "[h]is responses were logical, coherent, and relevant to questions asked. He exhibited no signs of a formal thought disorder." Furthermore, "[h]is emotional tone was appropriate to the content of his speech, and he exhibited no

overt hostility or paranoia during the interview." He believed that he had an anxiety disorder and "some form of bipolar disorder." Although he denied suicidal ideations, he admitted cutting himself "as a means of regulating his emotions." However, he claimed he "no longer engages in self-harm." At the time of this interview his hobbies included working out, playing poker, and working on cars. Petitioner has had daily nightmares and difficulty sleeping since he was 18 months old due to multiple traumatic events throughout his life. At the time of the interview (he was then incarcerated for violation of probation) he reported being sad most of the time, lacking energy to do much, and having periodic crying spells. (Id. at 6–7.)

Petitioner reported having episodic bursts of energy, in which he felt "euphoric, like he is on top of the world." There were times when petitioner stayed awake for up to two days without sleep and exhibited reckless behavior. Although petitioner reported an inability to focus on tasks or keep track of a conversation, Dr. Kraushaar found that he did not exhibit any "flight of ideas" or have difficulty tracking the conversation. Petitioner did not report any psychotic symptoms such as auditory or visual hallucinations and he denied grandiose beliefs. Petitioner reported anxiety in new or large groups of people. He could be compulsive about certain situations; for example, petitioner insists on cleaning his room before leaving to go anywhere or he will feel unsettled all day long. (Id. at 7–8.) During this assessment Dr. Kraushaar performed several different psychological tests. She found that petitioner had a "tendency to overstate his problems". However, his profile was "common among people with a significant trauma history." (Id. at 8–9.)

Dr. Kraushaar's final diagnoses of petitioner include bipolar disorder not otherwise specified; posttraumatic stress disorder, chronic; obsessive compulsive disorder; and rule-out antisocial personality disorder. Dr. Kraushaar also found that petitioner's experiences as a child with his biological and then adoptive parents contribute to his symptoms of PTSD. Petitioner's childhood contained dysfunctional physical and sexual relationships with both adults and children, leading to the inappropriate adult sexual relationships. Petitioner's bipolar-type illness may

compromise his ability to behave responsibly. A manic-phase may lead petitioner to be involved in pleasurable activities with painful consequences—sexual indiscretions or buying sprees. During these times petitioner would have a decreased need for sleep and an increase in goal-directed activities and impulsive activities. During these episodes petitioner had impaired judgment and a decreased ability to resist impulses. (Id. at 9–10.)

Although petitioner clearly has had and may continue to have mental health problems, it has not been shown that those problems prevented him from filing his petition timely. Dr. Kraushaar indicated that petitioner denied any suicidal or homicidal ideations and, although he went through a period of self-mutilation, that phase had ended. (Id. at 6–7.) Furthermore, Dr. Kraushaar did not find petitioner had auditory or visual hallucinations, delusions of grandeur, or paranoia (id.), that might interfere with his ability to comprehend deadlines and the requirements of filing a petition. C.f. Nichols, 11 F. App'x at 634 (affirming no tolling because petitioner lacked any symptoms such as hallucinations or homicidal or suicidal ideations, which would affect timely filing); Riva v. Ficco, 615 F.3d 41–43 (1st Cir. 2010) (reversing because petitioner exhibited "bizarre delusions of persecutory nature, paranoid ideation, auditory hallucinations, and somatic terrors" during applicable time periods); Carneal v. Crews, 2011 WL 2710222, at *11–12 (finding paranoia, delusional thoughts, and depression met the equitable tolling standard). Here petitioner has never alleged paranoia or delusions; in fact he specifically denied having any such thoughts. (Doc. 24-2 at 6–7.) Petitioner was on probation during the majority of the tolling time, nine months and nine days, and did not file a petition. After the tolling time passed petitioner was on probation another year, four months, and ten days and still did not file a petition. Petitioner's mental health during the applicable time period was not so extraordinary that equitable tolling would be appropriate.

Accordingly, the statute of limitations bars federal habeas relief.

# V. EVIDENTIARY HEARING

Petitioner has requested an evidentiary hearing.  (Doc. 24.)  The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a district court not hold an evidentiary hearing on a habeas corpus claim unless petitioner shows that:

> (A) the claim relies on--
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Section 2254(e)(2)(ii) requires that the petitioner (or his counsel) use due diligence in finding facts that could have assisted him.  "Diligence requires, 'at a minimum,' that the petitioner 'seek an evidentiary hearing in state court in the manner prescribed by state law.'"  Osborne v. Purkett, 411 F.3d 911, 915-16 (8th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 420, 437 (2000)).  Failure to comply with state law when requesting an evidentiary hearing reflects a lack of diligence.  Smith v. Bowersox, 311 F.3d 915, 921 (8th Cir. 2002).  Negligence and the choices of counsel are attributable to the client, because the lawyer is the agent of the client.  Coleman v. Thompson, 501 U.S. 722, 752–53 (1991).  Therefore, a lawyer's mistakes cannot normally serve as cause to excuse a procedural default.  Id.  Furthermore, the decision to grant a hearing is discretionary.  Wright v. Bowersox, 720 F.3d 979, 987 (8th Cir. 2013) (citing Williams v. Norris, 576 F.3d 850, 859 (8th Cir. 2009)).  A hearing is not necessary "if such a hearing would not assist in the resolution of [the petitioner's] claim."  Johnston v. Luebbers, 288 F.3d 1048, 1059 (8th Cir. 2002) (quoting Breedlove v. Moore, 279 F.3d 951, 960 (11th Cir. 2002)); Olds v. Norman, No. 4:09 CV 1782 CAS-TCM, 2013 WL 316017, at *21 (E.D. Mo. Jan. 8, 2013).

Petitioner did not directly appeal his guilty plea, did not file a motion for post-conviction relief under Missouri Supreme Court Rule 24.035, and did not request an evidentiary hearing to support such a motion. (Doc. 1). Petitioner was made aware during sentencing of his right seek review under Rule 24.035:

> THE COURT: Now, sir, I'm required under Supreme Court Rule 29.07(b)(4), to advise you of your right to proceed under Supreme Court Rule 24.035. This rule provides you with a right to file a motion in this court to vacate, set aside, or correct your judgment or sentence, if you claim your sentence imposed violates the Constitution and laws of this State or the Constitution of the United States, or if this Court was without the jurisdiction to impose the sentence, or if the sentence imposed [was] in excess of the maximum sentences authorized by law.
>
> This rule provides the exclusive procedure by which you may seek relief in this court for these claims. The form to be used is Criminal Procedure Form Number 40, which would be made available to you upon your request. No cost deposits are required.
>
> If you do not file this motion within 180 days after you are delivered to the Department of Corrections, such failure to file will be a complete waiver of your right to proceed under this rule. If you file such motion, you shall include every ground known to you for vacating, setting aside, or correcting your judgment or sentence.
>
> If you are indigent and file your own motion, counsel will be appointed for you. Counsel will have up to 60 days to file the amended motion and the prosecutor will have up to 30 days thereafter to file the response. **A written request for the hearing must be made within the required time limits, because if no request for hearings are timely made, then a hearing will not be held.**
>
> Do you understand what I just told you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Any questions about the procedures?
>
> THE DEFENDANT: No.

(Doc. 13-1 at 9-10; Resp. Ex. B at 4:11–5:19) (emphasis added).

Petitioner failed to act diligently on his right to request a hearing. Furthermore, petitioner has not now alleged what relevant facts he would prove in an evidentiary hearing.

Petitioner has not met the requirements of 28 U.S.C. § 2254(e)(2) for this court to hold an evidentiary hearing. Accordingly, petitioner's request for an evidentiary hearing (Doc. 24), is denied.

## VI. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law for asserting grounds for relief on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims now remains available to petitioner. See Mo. Sup.Ct. R. 29.15(b) (post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or sentence is filed; or, if no appeal is filed, within 180 days from the date the person is delivered to the Department of Corrections); Mo. Sup. Ct. R. 81.04(a) (10 days to file a notice of appeal after circuit court judgment is final).

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to the state trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so, because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149–50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).

The presentation of the federal grounds in the state court petition for a writ of habeas corpus under Missouri Supreme Court Rule 91 did not satisfy the exhaustion requirement. The Rule 91 habeas corpus proceeding in the Missouri state courts is an extraordinary proceeding that "does not remove a prior procedural default." Burns v. Gammon, 173 F.3d 1089, 1091 n.3 (8th Cir. 1999); Schneider v. Delo, 890 F. Supp. 791, 805 (E.D. Mo. 1995).

Petitioner did not raise any of his grounds at the circuit court level. (Doc. 1-3, Ex. F at 9-17; Doc. 13 at 4.) As he did not appeal, his claims were not raised at the state appellate court level. Petitioner argues his counsel was ineffective. Even if ineffective trial counsel could be proven, petitioner has not satisfactorily explained why that should excuse his failure to seek post-conviction relief. As previously discussed, petitioner was made aware of post-conviction relief procedures at the time of his sentencing. Specifically, the court advised petitioner, "[i]f you do not file this motion within 180 days after you are delivered to the Department of Corrections, such failure to file will be a complete waiver of your right to proceed under this rule." (Resp. Ex. B at 5:2–5.) Thus, all of petitioner's federal habeas grounds are procedurally barred, because they were not properly raised before the Missouri courts, both circuit and appellate.

Petitioner may avoid the procedural bar, however, if he can either demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure of the federal courts to review the claim would result in a fundamental miscarriage of justice. Maples v. Thomas, 132 S.Ct. 912, 922 (2012); Coleman v. Thompson, 501 U.S. 722, 749–50 (1991).

A.    Cause and Prejudice

To establish legally sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples, 132 S.Ct. at 922; Coleman, 501 U.S. at 750–52. To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

In order for mental illness to constitute cause and prejudice, "there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her positon and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief." Holt v. Bowersox, 191 F.3d 970, 974 (8th Cir. 1999). In Sims v. Dwyer, 2006 WL 2385262, No. 4:05 CV 727 CEJ, at *2 (E.D. Mo. Aug. 17, 2006), petitioner was diagnosed with paranoid schizophrenia, but no cause was found to excuse his procedural defaults. Sims' symptoms were controlled by medications during the relevant time period. Id.; see also Jasa v. Mathes, No. C03-4095-MWB, 2004 WL 2039854, at *7 (N.D. Iowa Sept. 13, 2004) (finding no cause when petitioner was diagnosed and treated for obsessive compulsive disorder and bi-polar disorder, because petitioner was able to understand and comply with procedural requirements).

As discussed above, although petitioner Mees has been diagnosed with mental illnesses, those mental illnesses have not been shown to have interfered with his ability to make rational decisions regarding his options for post-conviction relief. During the applicable period petitioner was first in shock incarceration and then free on probation. Nothing indicates that petitioner was unable to understand his legal situation and seek judicial relief himself or retain counsel to do so on his behalf.

Petitioner has not shown legally sufficient cause. Therefore, prejudice need not be discussed.


B.     Fundamental Miscarriage of Justice

Even if petitioner cannot show cause and prejudice, a procedural default may be overcome if denial would result in a fundamental miscarriage of justice. To demonstrate a fundamental miscarriage of justice, the petitioner may show that he was actually

innocent.  Murray v. Carrier, 477 U.S. 478, 495–96 (1986).  A habeas petitioner asserting actual innocence must do so with new, reliable evidence.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim.  Id. at 316.  Schlup requires that a habeas petitioner "come forward not only with new reliable evidence which was not presented at trial, but ... come forward with new reliable evidence which was not available at trial through the exercise of due diligence." Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).  A petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup, 513 U.S. at 327.

Petitioner Mees does not allege any new evidence that indicates actual innocence. He only refers to the same documents that were available at the time of his guilty plea. (Doc. 1-3 at 1, 4–7, 9–18.)  The documents that he argues are "new" (Doc. 1-3 at 2, 21–35), were easily available before he pled guilty.   See Kidd, 651 F.3d at 953. Additionally, petitioner admits his attorney knew of his mental health concerns as well as his minority status at the time the sexual assault occurred.  (Doc. 1-1 at 7–10.)  Petitioner freely informed the Circuit Court that he was satisfied with his attorney, at both the guilty plea and at sentencing hearings.

> THE COURT:  Your attorney's Brad Kessler?
>
> THE DEFENDANT: Correct.
>
> THE COURT:  Have you had sufficient opportunities to discuss this case with your attorney?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And are you satisfied that your attorney is informed of all the facts he needs to know to adequately advise you in this case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And have you been advised by your attorney as to all aspects of this case, including your legal rights?
>
> THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with the services your attorney has rendered to you?

THE DEFENDANT:  Yes.

(Doc. 1-3 at 12–13.)

THE COURT:  Now, sir, I'm required to examine you regarding the assistance you received from your attorney.  You were asked some questions prior to entering your plea of guilty, but now I must ask you some additional questions concerning your attorney's assistance to you in these matters. This hearing is on the record, I need you to raise your right hand.

(The defendant was sworn by the Court.)

THE COURT:  As I indicated, this hearing is on the record and you're reminded that you're under oath.  This hearing may be conducted outside the presence of your attorney if you so request, but you're reminded that you're under oath, and you may wish for your attorney to remain.

However, if you feel more comfortable in answering questions about your attorney, then your attorney will step outside until my questions are asked of you and then your attorney will be asked for his response, [if] any.  Do you want your attorney present?

THE DEFENDANT:  Yes

. . .

THE COURT:  Your attorney's Brad Kessler; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  He was present when you entered your plea, he was present when you were sentenced?

THE DEFENDANT:  Correct.

THE COURT:  Did he do everything you asked him to do prior to entering your plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Did you ask him not to do something and he did it anyway?

THE DEFENDANT:  No.

THE COURT:  Are you satisfied with the services you have received from your attorney, whether or not you're satisfied with the outcome of this case?

THE DEFENDANT: Yes.

THE COURT: The Court will make a finding that there's no probable cause to believe defendant has received ineffective assistance of counsel. And Defendant's remanded to Department of Justice Service for transportation to Missouri Department of Corrections. Just have a seat.

(Doc. 13-1 at 9-13, Resp. Ex. B at 4–7.)

Both of these hearings provided petitioner ample opportunity to assert he received ineffective assistance of counsel or that counsel refused to take the case to trial despite his wishes, as he now asserts. Therefore, petitioner's argument that he should be granted relief from the procedural bar is without merit.

Nevertheless, Congress has authorized federal courts to consider and to dismiss the merits of procedurally barred grounds if the court concludes that the grounds are without merit. 28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds on their merits.

## V.  STANDARD OF REVIEW

Because no state court has decided any of petitioner's federal grounds on the merits, the pre-AEDPA standard for habeas review governs. Gringas v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations omitted); Montes v. Trombley, 599 F.3d 490, 495 (6th Cir. 2010). The pre-AEDPA standard requires de novo review by this court. Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011).

## VI.  DISCUSSION

A.    Ground 1

In Ground 1, petitioner alleges the trial court erred by accepting his guilty plea, because it was not knowing, voluntary, and unintelligent. Specifically, petitioner claims

his alleged mental illness prevented him from understanding the full consequences of his plea.

Guilty pleas must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970); <u>Spicer v. Dormire</u>, No. 4:10 CV 1192 SNLJ/MLM, 2012 WL 4050313, at * 8–9 (E.D. Mo. May 15, 2012). A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in the constitutional sense "unless induced by threats…, misrepresentation…, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." <u>Brady</u>, 397 U.S. at 754. A plea of guilty is intelligently made if petitioner was advised by competent counsel, was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties. <u>Id.</u> at 756.

The record does not establish the merits of petitioner's claim. During his guilty plea proceedings, he clearly, concisely, and accurately answered personal questions posed by the court. (Doc. 1-3 at 11–12.). Petitioner also stated he understood the charges against him and had discussed the charges with his attorney, with whom he stated he was satisfied. (<u>Id.</u> at 12–13.) Additionally, when asked if he understood his rights and the consequences of entering such a plea, petitioner reaffirmed his understanding. (<u>Id.</u> at 13–15.) The only confusion during the proceeding that can be derived from the record occurred at the beginning of the guilty plea proceeding when the court had to ask petitioner to lower his hand after swearing in. (<u>Id.</u> at 11.) Petitioner responded similarly to similar sets of questions a second time during his April 27, 2006 sentencing. (<u>See</u> Doc. 13-1 at 10-12, Resp. Ex. B at 5–7.)

As discussed above, the evidence presented regarding petitioner's mental illness does not indicate that he was incompetent or unable to comprehend his guilty plea. (Doc. 24-2 at 6–15.) Petitioner has been diagnosed as having bipolar disorder (not otherwise specified), posttraumatic stress disorder (chronic), and obsessive compulsive disorder (and rule-out antisocial personality disorder). (<u>Id.</u> at 9.) No cognitive impairments were

noted.  (Id. at 6–8.)  The court has examined petitioner's mother's observations and finds that they do not indicate an inability to understand the proceedings or the plea he entered. (See Doc. 1-3 at 21–35.)

Therefore, petitioner's claim of an unknowing, involuntary, and unintelligent guilty plea is without merit.

B.     Ground 2

In Ground 2, petitioner argues his trial counsel rendered constitutionally ineffective assistance by failing to investigate petitioner's history of mental illness before advising him to plead guilty.  Petitioner argues that, had counsel investigated his mental illness, he would have understood how serious his mental health issues were and would have advised him not to plead guilty because he had a viable defense.  (Doc. 1-1 at 10–16; Doc. 14 at 4.)

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined ineffective assistance of counsel under the Sixth and Fourteenth Amendments.  The Strickland test requires federal habeas corpus relief if it is shown that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.

A petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel.  First, he must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Id. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance.  Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987).  Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment.  Strickland, 466 U.S. at 690–91.

The second element of the Strickland test requires that a habeas petitioner demonstrate that he was actually prejudiced by counsel's dereliction of duty.  Id. at 687. To show prejudice, the habeas petitioner must establish that counsel's deficient

performance rendered the outcome of the proceeding unreliable or fundamentally unfair. Id. at 687; Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). In addition, the prejudice must not be simply a "possibility" but an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

Beyond conclusory allegations made in his habeas petition, petitioner refers to no evidence of constitutionally ineffective legal assistance. His statements in the March 14, 2006 guilty plea hearing regarding his satisfaction with his attorney contradicts his current claim. (See Doc. 1-3 at 12–13.) Additionally, when given a second opportunity to voice his concerns during his April 27, 2006 sentencing hearing, petitioner answered affirmatively as to (1) whether his attorney did everything requested of him prior to the entering of his guilty plea, (2) whether his attorney complied with all of his wishes, and (3) his satisfaction with his attorney's representation. (See Resp. Ex. B at 7.) Neither Strickland element can be met based on this record.

Petitioner cites a sworn statement by his sister to support his claim that his counsel was advised of petitioner's history of mental illness; this exhibit does not mention petitioner's mental illness. (See Doc. 1-3, Ex. B at 2.) The sworn statement from petitioner's mother does assert that petitioner and his family made counsel aware of his mental health background. (See id. at 3.) However, her statement, alone, does not overcome the presumption that his attorney made a strategic choice to suggest a guilty plea because petitioner admitted his guilt. (Doc. 1-3 at 1.)

Petitioner claims his counsel did not sufficiently investigate his case. Petitioner's sworn exhibit claims that his attorney pressured him to plead guilty and that he was told to just answer all questions "yes" except for whether he was forced to plead guilty. (Doc. 1-3 at 36; Doc. 1-4 at 1–3.) These new assertions contradict both the guilty plea and sentencing colloquies during which petitioner stated he was freely pleading guilty, had no questions, and was satisfied with his attorney. (Compare Docs. 1-3 at 36 and 1-4 at 1–3 with Docs. 1-3 at 12:20–13:10, 15:20–17:2 and Doc. 13-1 at 10-13, Resp. Ex. at B 5:20–7:19.) During the sentencing, petitioner was offered an opportunity to speak to the judge

outside the presence of his counsel if he wished to; he did not. (Resp. Ex. B. 6:3–13.) Petitioner has not offered any evidence which overcomes his own testimony during his guilty plea and his sentencing.

This ground is without merit.

C.      Ground 3

In Ground 3 petitioner argues his trial counsel rendered constitutionally ineffective assistance by failing to challenge the charges as a violation of double jeopardy. The Fifth Amendment of the United States Constitution states in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." (U.S. Const. amend. V.) Double jeopardy protections stem from underlying premise that a defendant should not be twice tried or punished for same offense. Schiro v. Farley, 510 U.S. 222, 229 (1994). The Double Jeopardy Clause affords a defendant three basic protections. Ohio v. Johnson, 467 U.S. 493, 497–98 (1984). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). Exactly when jeopardy attaches during a juvenile case was first discussed in Breed v. Jones, 421 U.S. 519, 537 (1975). The Supreme Court held that if the "hearing is adjudicatory in nature, jeopardy will attach and bar a subsequent criminal prosecution of the juvenile as an adult." Id. In dicta, the Court observed that "nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile [to adult court], substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding." Id. at 538 n.18. In Breed, the juvenile court found the petitioner guilty or delinquent. Id.

In petitioner's case, the juvenile court heard testimony from two witnesses and petitioner, found that he had committed the offense,[5] and ordered him held for a dispositional hearing.

Missouri law requires a hearing be held before a juvenile is transferred to adult court.

> 1. If a petition alleges that a child between the ages of twelve and seventeen has committed an offense which would be considered a felony if committed by an adult, the court may, upon its own motion or upon motion by the juvenile officer, the child or the child's custodian, order a hearing and may, in its discretion, dismiss the petition and such child may be transferred to the court of general jurisdiction and prosecuted under the general law;

Mo. Rev. Stat. § 211.071.

This hearing is not adjudicatory in nature; it does not consider the innocence or guilt of the juvenile when considering whether to transfer to a court of general jurisdiction. Rather, the hearing allows the court to make findings, in writing, regarding whether a juvenile is amenable to treatment under the juvenile system. The court is asked to consider, among other things,

> (1)     The seriousness of the offense **alleged** and whether the protection of the community requires transfer to the court of general jurisdiction;

> (2)     Whether the offense **alleged** involved viciousness, force and violence;

> (3)     Whether the offense **alleged** was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

> (4)     Whether the offense alleged is part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation;

---

[5] The juvenile court found that this was "one of the most threatening records" it had had before it. There were "no less than three robberies, each with a loaded weapon. The degree of delinquency which that represents, the degree of sophistication which that represents and the degree of impossibility of assistance as a juvenile which that represents, I think is overwhelming . . . ." Breed, 421 U.S. 519, 524 n.6 (1975).

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

(6) The sophistication and maturity of the child as determined by consideration of his home and environmental situation, emotional condition and pattern of living;

(7) The age of the child;

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in disposition.

Mo. Rev. Stat. § 211.071.6 (emphasis added).

At no time is the Family Court asked to decide whether the juvenile committed the alleged crime or not and the juvenile's freedom is not put in jeopardy at this hearing. If the petition is not dismissed for action by the court of general jurisdiction, then the matter is set for a separate hearing in juvenile court. Mo. Rev. Stat. § 211.171. Only at this second hearing is a juvenile's freedom put in jeopardy and, therefore, the protections against double jeopardy attach.

The Family Court of St. Louis County held a hearing to determine whether petitioner was an appropriate subject for the juvenile court system. To do this the court heard testimony regarding the alleged events; reviewed records of family services; and concluded that petitioner not be dealt with under the provisions of the Juvenile Code. (Doc. 1-3 at 4–5.) Contrary to petitioner's assertions, the state juvenile court did not reach a final verdict or accept a guilty plea; nor was it adjudicatory in nature. (See Doc. 1-3 at 3–6.) Rather, the court determined that adjudication under general law, rather than juvenile law, would be more appropriate and dismissed the case without prejudice to any further prosecution under general law. (See id. at 5–6.) Therefore, petitioner's counsel did not err by declining to pursue a meritless double jeopardy defense.

Thus, this claim of ineffective assistance of counsel is without merit.

D.     Ground 4

In Ground 4, petitioner argues his trial counsel rendered constitutionally ineffective assistance by requesting petitioner to sign an admission of guilt and then using that admission in convincing petitioner to plead guilty.

Petitioner submitted to Circuit Court a written guilty plea statement on April 22, 2005.  (Doc. 1-3 at 1.)  This statement "stipulate[s] to the facts as alleged in the police report and indictment charging [petitioner] with 3 counts of Statutory Sodomy in the First Degree . . ."  (Id.)  The only caveat petitioner placed on his guilty plea was, "[a]t no time was I over 14 years of age during the commission of any of the offenses charged."  Petitioner asserted that he would "not admit [his] guilt to any of the charges against [him] if the State continues in its allegations that [he] was 17 years of age or older."  (Id.)

On January 31, 2006, the Family Court of St. Louis County dismissed the juvenile petition for prosecution in the court of general jurisdiction.  (Doc. 1-3 at 4–6.)  On March 14, 2006, petitioner pled guilty to three counts of child molestation.  (Doc. 1-3 at 9–17.)  During this hearing petitioner was specifically asked by the court about the state's allegations and whether he was pleading guilty of his own free will,

> THE COURT:  Mrs. Kilgore, what are the essential elements of these charges and what would the evidence be if this case had went to trial?
>
> MS. KILGORE:  Your Honor, as to all three counts, the State would prove beyond a reasonable doubt that the defendant committed the Class B Felony of child molestation in the first degree, that on all three counts between the dates of January 1st of 1999 and March 15th of 2002, at 9264 Coral, in the County of St. Louis, the defendant subjected CM, who was less than 14 years of age, to sexual contact.  The State would specifically show that in all three counts on separate occasions the defendant had placed his hand on the genitals and vagina of CM, whose date of birth is June 30th of 1992.
>
> THE COURT:  Mr. Mees, regarding all three counts, are the statements of the prosecuting attorney substantially true and correct?
>
> THE DEFENDANT:  Yes.

THE COURT:  Have any threats or promises been made to force you to enter this plea of guilty?

THE DEFENDANT:  No.

(Doc. 1-3 at 15:2–22.)

At no time when petitioner was offered an opportunity to challenge his guilty plea did he do so.  He freely provided the court both an oral and written admission of guilt in exchange for a blind plea.  He received some leniency in the form of a 120-day shock incarceration, followed by five years of probation, with the execution of three fifteen year concurrent sentences suspended.  (Doc. 13-1 at 3–4.)

Petitioner's claim that his plea was coerced by his attorney is without merit.


## VII.  CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for an evidentiary hearing (Doc. 24) is denied.

**IT IS HEREBY RECOMMENDED** that the petition of Matthew J. Mees for a writ of habeas corpus (Doc. 1) be dismissed.

**IT IS FURTHER RECOMMENDED** that, because petitioner has made no substantial showing that he was deprived of a constitutional right, a certificate of appealability be denied.  28 U.S.C. § 2253(c)(2).

The parties are advised that they have 14 days to file written objections to the Report and Recommendation.  The failure to file timely written objections may waive the right to appeal issues of fact.


_____
/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 23, 2016.